**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CHARLES DONELSON, # R-02279,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-1311-SMY** |
| | ) | |
| **MICHAEL ATCHISON, *et al*.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff is currently incarcerated at Pontiac Correctional Center ("Pontiac"), where he is serving a 44-year sentence for murder, and lesser sentences for two other offenses.  He brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, claiming numerous violations of his constitutional rights by more than 20 named individual Defendants, as well as by the City of Chester, Illinois, and ten unknown (John Doe) Defendants.  Additionally, Plaintiff seeks to bring claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq*., and the Rehabilitation Act ("RA"), 29 U.S.C. §794 (Doc. 1, p. 7).  All of the incidents giving rise to Plaintiff's claims occurred while he was confined at Menard Correctional Center ("Menard").

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

**The Complaint**

The lengthy complaint raises a laundry list of numerous claims, including:  Plaintiff was not allowed to access the yard for exercise for an extended period of time; prison guards retaliated against him for making complaints and filing grievances; he was subjected to excessive force; he was housed in unsanitary cells; he was denied medical treatment; his legal documents were mishandled; his food trays were tampered with; and his grievances were not properly addressed.

Plaintiff claims that in September 2012, then-Warden Defendant Atchison implemented a policy to identify inmates designated as "staff assaulters" by placing black stripes on their clothing[1] (Doc. 1, p. 17).  Plaintiff was classified as a "staff assaulter" as well as a sexual predator.  He disputes these labels and the application of the policy.  Prior to this new policy and designation, Plaintiff had been housed in Menard's "North 2" housing area, and he had access to the outdoor yard for exercise.

Plaintiff complained to Defendants Saurwein[2] and Holton about having to wear the black stripes, which he believed made him a target for harassment by staff.  Defendants Kemper, Baker, Smith, McMillon, Hood, Helmann, Whitoff, Pelker,[3] Holton, and Cartwright tried to goad him into hitting them, which would have led to disciplinary action against Plaintiff (Doc. 1, pp. 18-19).  On one occasion (November 2, 2012, discussed further below), an encounter between

---

[1] Plaintiff attaches a copy of this policy at Doc. 1-1, p. 11.

[2] Plaintiff included Melissa Saurwein in the caption of his pleading, but omitted her from the list of parties; she was not included as a Defendant on the Court's docket sheet.  The Clerk shall be directed to add her as a party.

[3] While Plaintiff makes allegations of misconduct against Sgt. Pelker and Lt. Cartwright in the body of the complaint (Doc. 1, pp. 18, 20), he failed to include these individuals either in the case caption or among the listed Defendants.  Because it appears that Plaintiff intended to bring claims against Sgt. Pelker and Lt. Cartwright, the Clerk shall be directed to add them as party Defendants.

Plaintiff and Defendant Kemper resulted in a disciplinary ticket.

From September 21, 2012, to April 2013, Plaintiff was repeatedly denied access to recreation in the yard. Although Plaintiff's explanation for the denial is not entirely clear, the reasons had to do with his housing assignment and the staff-assaulter designation, as well as rules that prohibited general-population inmates (of which Plaintiff was one) from being placed on the yard at the same time as inmates who were in disciplinary segregation. Lockdowns apparently also led to Plaintiff being confined to his cell. Defendant Holton refused to allow his staff to take Plaintiff to the designated yard for staff-assaulters ("16 Box"),[4] which was located on the other side of the facility from where Plaintiff was housed (Doc. 1, p. 18). Plaintiff filed a grievance over the incident, and the response stated he should be taken to 16 Box. He showed the response to Defendants Baker, McMillon, Hood, Pelker, Helmann, and Holton, but Holton refused to follow it. Defendant Cartwright also refused to let Plaintiff go to the yard.

On one occasion, Plaintiff was taken to the segregation lockdown yard. He complains that while there, he had no access to the phone, weights, or other unspecified privileges that he had enjoyed in the general population yard. At some point, the grievance officer stated that Plaintiff could go to the gym (which is also the dining hall). However, Plaintiff claims that staff assaulters do not get gym, so it is unclear whether he ever went there (Doc. 1, p. 20). Plaintiff states that he was denied access to yard exercise for approximately 210 days in all (Doc. 1, p. 27). He suggests that his cell was too small for him to exercise while confined there (Doc. 1, p. 21). He developed stomach problems, heartburn, and foot problems (Doc. 1, p. 20), as well as extreme stress, spasms, and weight gain (Doc. 1, p. 27).

On November 3, 2012, while the prison was on lockdown, Plaintiff was in handcuffs on

---

[4] The Weapon Violators/Staff Assaulters policy included with the complaint specifies that all prisoners so designated shall attend yard together in "16 Box Yard" where they will be separate from other prisoners (Doc. 1-1, p. 11).

his way to the shower when Defendant Kemper reached out and slapped at Plaintiff's face[5] (Doc. 1, p. 19).  After he and the other inmates were done showering and back in handcuffs, Plaintiff "was snatched and grab[bed] yanking [Plaintiff's] arm in handcuff[s]" *Id.*  Kemper told Plaintiff he was going to the "hole" for looking at him the way he did.  Plaintiff claims that Defendant Kemper wrote a false disciplinary report over this encounter as retaliation (Doc. 1, p. 20).

Plaintiff received three months in segregation as a result of Defendant Kemper's report. He was placed in a cell on 4 Gallery that was infested with black mold, and had moldy water running out of the walls (Doc. 1, pp. 19-20).  All staff in North 2 knew about the bad cell conditions and about Plaintiff's complaints over being denied yard exercise, so they knowingly put him in the moldy cell to retaliate against him for his grievances.  The cell conditions caused him to get sick and have trouble breathing.  In addition, his legal mail and grievances "disappeared" (Doc. 1, p. 20).

On November 10, 2012, Defendants Atchison and Harrington came to Plaintiff's cell (Number 445), and he showed them the bad conditions (Doc. 1, pp. 20, 26).  However, they did nothing about the mold or about Plaintiff's complaint that he had been falsely accused of the disciplinary infraction.  They advised him to file a grievance.  Later, Defendant Butler walked by and looked at the black mold at Plaintiff's request; she too left without doing anything (Doc. 1, p. 26).

When Plaintiff was released from segregation in February 2013, he was moved to North 2, 7 Gallery, and placed in a cell that lacked hot water and had mildew.  Defendant Baker refused to do anything about these problems (Doc. 1, p. 21).  Plaintiff filed grievances over the conditions and staff conduct, and in retaliation, unnamed staff would tamper with his food trays,

---

[5] Plaintiff submitted a copy of his grievance over this incident as an exhibit (Doc. 5, pp. 13-14). According to that account, Defendant Kemper did not make contact with his face, but merely made a threatening physical gesture.  Plaintiff then "stopped and looked at him with pure anger[.]"  *Id.*

so that food portions were missing when he received them. Defendant Phoenix refused to process Plaintiff's grievances. Defendant Cartwright refused to move Plaintiff to a different gallery. He continued to get sick with breathing and stomach issues and foot pain, because of the lockdown and lack of exercise, and from being kept in the unhealthy cell (Doc. 1, p. 22).

Early in the morning of February 25, 2013, Plaintiff was preparing for a court date and packed up his legal documents to take with him. However, he was told that he could not take all the items along. Defendant Holder was called in. He ordered Plaintiff to return half of the property to his cell under his escort (Doc. 1, pp. 22-23). Plaintiff was in shackles, carrying his bags back to his cell, and when they arrived at an area where there were no surveillance cameras, Defendant Holder stepped on the shackle to trip Plaintiff. He then smacked and hit Plaintiff, bruising his face, and injuring his ear and neck. Other officers were present but did nothing to stop the assault.

After returning from the court date, Plaintiff sought protective custody but was denied. As a result of his complaints, Plaintiff was summoned to meet with Defendants Anthony and Spiller (intelligence or internal affairs officers) about Defendant Holder's assault. However, their approach caused Plaintiff to feel intimidated and threatened, fearing another attack (Doc. 1, p. 24).

On June 14, 2013, Plaintiff was moved back to 7 Gallery, Cell 716. He complained to Defendant Baker that his mattress was contaminated with feces, and the cell was dirty and contaminated with urine. Defendant Baker told Plaintiff he didn't care, and did nothing. Plaintiff filed a grievance. Defendant Baker later made a reference to Plaintiff's earlier grievances over the staff-assaulter designation, leading Plaintiff to believe that Defendant Baker's failure to act was in retaliation for that earlier grievance activity (Doc. 1, p. 25).

Plaintiff claims that numerous Menard officials retaliated against him for complaining about the conditions in several cells where he was housed. Defendant Hood prevented Plaintiff from keeping a medical appointment by signing Plaintiff's name on his call pass to indicate Plaintiff had refused the visit (Doc. 1, p. 25). However, Plaintiff had not refused. Defendants Hood, Baker, Creason, Smith, McMillon, and Shearing "harassed" Plaintiff in retaliation for his complaints about the cells in North 2 (Doc. 1, p. 26). Plaintiff's mail was misplaced. He was housed in six different cells (716, 722, 749, 445, 429, and 324), some or all of which had black mold, a broken sink, and/or water coming out of the toilet. *Id.*

Plaintiff sought medical care for what he thought was an ear infection, and then a tonsil infection due to the bad cell conditions. He saw Defendants Shearing and Nwaobasi, but neither physician gave him any treatment (Doc. 1, p. 26).[6] Plaintiff goes on to assert that Defendants Shearing and Nwaobasi had the duty as medical staff to inspect the housing units for safety and sanitation. They allegedly conspired with unnamed security staff in a scheme to provide inmates with deficient medical care, or to refuse to diagnose their illnesses caused by the bad cell conditions, in order to save money and keep the North 2 housing area open despite the obvious health hazards due to the mildew, black mold, and "polluted water system" (Doc. 1-1, p. 1). Defendants Creason, Saurwein, Atchison, and Butler attempted to house inmates in North 2 cells despite "knowing those cells to be condemn[ed]." *Id.*

Defendant Bramlett (paralegal) held or took Plaintiff's legal documents which had been sent to the law library to be copied, so that Plaintiff would miss deadlines. He allegedly still has not returned several documents to Plaintiff (Doc. 1-1, p. 2).

In October 2013, when Plaintiff left Menard for another court date, Defendant Holder

---

[6] Plaintiff submitted a copy of a grievance and response, stating that Defendant Shearing noticed his tonsils were red and swollen in March 2013 but gave no treatment at that time (Doc. 5, pp. 4-5).

(who had previously assaulted Plaintiff) told him that if he returned to Menard, Plaintiff would "be his dinner" (Doc. 1-1, p. 3).  Due to this remark, Plaintiff fears for his life if he is sent back to Menard in the future.

As relief, Plaintiff seeks compensatory and punitive damages, as well as an injunction to prevent him from being returned to Menard (Doc. 1-3, p. 2).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court must promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit."  *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility."  *Id*. at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v.*

*Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action, which shall receive further review:

**Count 1:**  Eighth Amendment claim against Defendants Holton and Cartwright for denying Plaintiff access to the yard, thus preventing him from engaging in physical activity necessary to maintain his health;

**Count 2:**  Eighth Amendment claim against Unknown (John Doe) Defendants,[7] and Defendants Baker and Cartwright, for placing Plaintiff in unsanitary cells and/or failing to remedy the cell conditions in response to Plaintiff's complaints;

**Count 3:**  First Amendment claim against Unknown (John Doe) Defendants, for housing Plaintiff in the cell contaminated with black mold in November 2012, in retaliation for his complaints and grievances over the denial of yard;

**Count 4:**  First Amendment claim against Defendant Baker, for refusing to remedy the unsanitary conditions in Plaintiff's cell in June 2013 (contamination with feces and urine), in retaliation for Plaintiff's grievances over his staff-assaulter classification;

**Count 5:**  First Amendment claim against Defendant Hood, for preventing Plaintiff from being taken to his medical appointment, in retaliation for Plaintiff's grievances and complaints over his cell conditions;

**Count 6:**  Eighth Amendment claim against Defendant Holder for using excessive force against Plaintiff in an assault on February 25, 2013, and against Unknown (John Doe) Defendant Officers for failing to intervene to stop the assault;

**Count 7:**  Eighth Amendment claim against Defendants Shearing and Nwaobasi for denying Plaintiff medical treatment for his infected tonsils in approximately March 2013.

Counts 5, 6 and 7, however, are factually unrelated to the events in Counts 1-4, and

---

[7] Neither this claim nor the claim in Count 3 can proceed against the Unknown (John Doe) Defendants until Plaintiff first identifies those individuals in a properly filed amended complaint, so that they may be served with process.

involve different Defendants.  For these reasons, Counts 5, 6, and 7 cannot proceed in this action. In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George,* 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)).

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Counts 5, 6, and 7, and shall open three new cases (one for each claim), each with a newly-assigned case number.  However, Plaintiff shall have an opportunity to voluntarily dismiss any or all of the newly severed cases if he does not wish to proceed on the severed claims or incur the additional filing fees.

Plaintiff's remaining allegations, however, fail to state a claim upon which relief may be granted and shall be dismissed.  A number of the named Defendants shall be dismissed as well. The claims to be dismissed are:

**Count 8:**  Excessive force claim against Defendant Kemper for his encounter with Plaintiff on November 3, 2012;

**Count 9:**   Retaliation claim against Defendant Kemper for filing false disciplinary charges against Plaintiff on November 3, 2012;

**Count 10:**  Harassment claims related to Plaintiff's identification as a "staff assaulter" against Defendants Kemper, Baker, Smith, McMillon, Hood, Helmann, Whitiff, Pelker, Holton, and Cartwright; and retaliation claims against Defendants Hood, Baker, Creason, Smith, McMillon, and Shearing for unspecified harassment;

**Count 11:**   Claim against Defendant Phoenix for mishandling Plaintiff's grievances;

**Count 12:**  Claims against Defendants Shearing and Nwaobasi for conspiracy and failure to monitor cell conditions;

**Count 13:**  Claim against Defendant Bramlett for withholding Plaintiff's legal documents and causing him to miss deadlines;

**Count 14:**  Claims under the ADA and Rehabilitation Act;

**Count 15:**  Other miscellaneous claims.

**<u>Claims to Receive Further Review</u>**

**Count 1 – Denial of Exercise**

Plaintiff claims that he went for a total of 210 days over an approximate seven-month period without being allowed to exercise outside his cell.  Further, he indicates that he did not have sufficient space in his cell to exercise there.  A denial of the ability to engage in physical activity that is of sufficient duration to affect an inmate's health may violate the Constitution. *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001); *see also Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013) (plaintiff stated Eighth Amendment claim where cumulative effect of repeated lockdowns deprived him of yard privileges, and cell was too small for physical activity).  Plaintiff may proceed with this claim against Defendants Holton and Cartwright.

However, it does not appear from the complaint that any other Defendants were directly responsible for denying Plaintiff access to the exercise areas outside his cell. Defendant Atchison promulgated the "staff assaulter" policy, but the policy allowed such inmates access to a designated area for out-of-cell exercise.  Defendants Baker, McMillon, Hood, Pelker, and Helmann were aware of Plaintiff's grievance response stating he should be taken to 16 Box for exercise, but he does not allege that they prevented him from going there.  For these reasons, Defendants Atchison, Baker, McMillon, Hood, Pelker, and Helmann shall be dismissed from Count 1 without prejudice.

**Count 2 – Unsanitary Cell Conditions**

Prison conditions that deprive inmates of basic human needs – food, medical care,

sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions-of-confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987). A combination of conditions may violate the Eighth Amendment if they have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need" such as adequate sanitation. *See Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (quoting *Wilson*, 501 U.S. at 304. *See also Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012) (depending on severity, duration, nature of the risk, and susceptibility of the inmate, prison conditions may violate the Eighth Amendment if they caused either physical, psychological, or probabilistic harm).

The combination of conditions in the various cells infested with mold and mildew, leaking walls and lack of hot water, along with Plaintiff's health problems attributed to those conditions, suffice at the pleading stage to satisfy the objective portion of an Eighth Amendment claim. Additionally, the cell where Plaintiff was housed in June 2013 exposed him to unsanitary conditions that included contamination with human waste, also an objectively serious health risk. *See, e.g., Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007); *Johnson v. Pelker*, 891 F.2d

136, 139 (7th Cir. 1989).

The subjective component of unconstitutional punishment focuses on the intent with which the acts or practices constituting the alleged punishment are inflicted; in other words, the state of mind of the defendant. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994).  In conditions of confinement cases, this is deliberate indifference to inmate health or safety; the defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994).  The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm.  *Farmer*, 511 U.S. at 842.

Plaintiff does not indicate who was directly responsible for placing him in the first bad cell on 4 Gallery after the November 3, 2012, disciplinary report.  If those unknown Defendants are identified in an amended complaint, this claim may proceed against them.  For now, Plaintiff may proceed on Count 2 against Defendants Baker and Cartwright, who were directly responsible for keeping Plaintiff in the mildew-infested cell in February 2013.  This claim against Defendant Baker also includes the June 2013 incident when he refused to remedy the conditions in Cell 716, 7 Gallery, which included contamination with feces and urine.

While Plaintiff complained about the first cell in November 2012 to Defendants Atchison, Harrington, and Butler when they passed by on the gallery, his brief encounter with these supervisory/administrative officials is not sufficient to hold them liable for failing to take steps to correct the problems.  They advised Plaintiff to file a grievance so that his complaint

could be dealt with through normal channels.  Based on these facts, he has failed to state a deliberate indifference claim against them.  *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (prisoner cannot expect one official to do another's job, nor can he hold liable every official to whom he complains).  In addition, they incur no liability on account of their supervisory positions, because the doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions.  *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).  Accordingly, Defendants Atchison, Harrington, and Butler shall be dismissed from Count 2 without prejudice.

**Count 3 – Retaliatory Placement in Unsanitary Cell**

Plaintiff articulates a distinct claim from the Eighth Amendment claim in Count 2, stating that his November 2012 placement in the moldy cell was in direct retaliation for his complaints and grievances regarding the denial of yard/exercise access.  Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). However, as in Count 2, Plaintiff does not identify which prison official(s) made this retaliatory cell assignment.  In order to proceed on this claim, he must identify those individuals (designated for now as Unknown/John Doe Defendants) in an amended complaint.

**Count 4 – Retaliation Claim – Defendant Baker**

In addition to the Eighth Amendment claim against Defendant Baker in Count 2, Plaintiff asserts that Defendant Baker's refusal to address the waste contamination in Cell 716, 7 Gallery, in June 2013 was motivated at least in part by a desire to retaliate against Plaintiff for filing grievances over the staff-assaulter label.  Such retaliation in response to a prisoner's protected

First Amendment right to raise complaints about his conditions of confinement gives rise to a separate claim.  Plaintiff may pursue Count 4 in this action, together with his other claim against Defendant Baker in Count 2.

**Count 5 – Retaliation Claim – Defendant Hood**

This claim survives threshold review under § 1915A, because Plaintiff alleges that Defendant Hood took an adverse action against Plaintiff (causing him to miss a medical appointment) in order to retaliate against him for complaining about the cell conditions. However, because there are no other claims against Defendant Hood, and because this incident is legally and factually independent from the other surviving claims, it must proceed in a separate action and will be severed as ordered below.

**Count 6 – Excessive Force Claim – Defendant Holder and John Does**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983.  *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).  Here, Plaintiff has alleged that Defendant Holder maliciously assaulted him on February 25, 2013, and that the force used was not applied in a good-faith effort to maintain or restore discipline.  Additionally, the John Doe Officers who failed to intervene to stop the excessive use of force may be liable.  *See Archie v. City of Racine*, 826 F.2d 480, 491 (7th Cir. 1987); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972).  Plaintiff may thus proceed with his excessive force claim against Defendant Holder.  However, he must identify the John Doe Officers by name in an amended complaint before he can proceed against them.

Additionally, Plaintiff states that he met with Defendants Anthony and Spiller to discuss

his complaint over Defendant Holder's assault.  They were apparently charged with investigating the incident, but the way they questioned him caused Plaintiff to feel intimidated and threatened. These facts do not support any constitutional claim against Defendants Anthony or Spiller. According to the complaint, their only role was to look into Plaintiff's complaint about an assault.  He does not allege that either of them was present during the attack.  Their investigation after the fact could not have prevented the assault.  For these reasons, Defendants Anthony and Spiller shall be dismissed with prejudice from Count 6 and from the action.

Again, the claim in Count 6 must proceed in a separate action, because it involves an incident and Defendant (Holder) distinct from the claims in Counts 1-4 as well as from those in Counts 5 and 7.

One final note is in order in reference to Count 6.  Plaintiff's request for an injunction preventing corrections officials from returning him to Menard is directly tied to Defendant Holder's threat to harm Plaintiff if he is sent back to that prison.  Accordingly, the request for this particular injunctive relief shall become part of the severed action that will contain Count 6. Any motion Plaintiff may file regarding such an injunction shall be filed only in the new case containing Count 6.  Furthermore, should he proceed with this severed claim, it may be necessary for Plaintiff to amend the complaint in that action in order to include an appropriate Defendant to be responsible for implementing any injunctive relief which might be ordered.  *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

**Count 7 – Deliberate Indifference to Medical Needs – Defendants Shearing and Nwaobasi**

Plaintiff complains that he sought treatment for infected tonsils, but neither Defendant

Shearing nor Defendant Nwaobasi gave him any medical care.  It is not clear whether he requested medical attention for his suspected ear infection.

In order to establish deliberate indifference to a serious medical need, a plaintiff must show that a prison official acted or failed to act despite his knowledge of a serious risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).  A delay or denial of treatment that exacerbates the injury or unnecessarily prolongs an inmate's pain may constitute deliberate indifference. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012).  Plaintiff claims he received no treatment at all for a condition which apparently caused him pain and distress.  He may therefore proceed with Count 7.  Again, this claim is factually and legally unrelated to the claims in Counts 1-6, thus it also shall be severed into a new, separate action.

## Claims to be Dismissed

### Count 8 – Excessive Force – Defendant Kemper

Plaintiff accuses Defendant Kemper of using excessive force against him on November 3, 2012, when he "reached out slapping at" Plaintiff's face (Doc. 1, p. 19).  However, Plaintiff's account indicates that Defendant Kemper never made any physical contact with Plaintiff's face, thus no "force" was used.  Plaintiff further states that after the "slapping," somebody yanked his handcuffed arms, but he does not say who did this.  These facts do not state an Eighth Amendment claim against Defendant Kemper.  There may be a claim against the person who yanked Plaintiff's arms, but the current complaint does not include sufficient facts to allow the Court to determine whether such a claim would merit further review.  Count 8 shall thus be dismissed without prejudice.

### Count 9 – Retaliation/False Disciplinary Charges – Defendant Kemper

Plaintiff claims that the disciplinary report issued by Defendant Kemper over the

"slapping at" incident was false, and done in retaliation (Doc. 1, p. 20).  However, he does not further explain this claim.  He does not identify any protected activity on his part that allegedly motivated Defendant Kemper to retaliate against him, thus, he falls short of articulating a retaliation claim.  *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed).  The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

Nothing in Plaintiff's complaint suggests that he was deprived of the opportunity to contest the disciplinary charge in a hearing.  For these reasons, the claims in Count 9 against Defendant Kemper shall be dismissed without prejudice.

**Count 10 – Harassment**

This count combines several general harassment claims.  First, Plaintiff alleges that after he was identified as a "staff assaulter" and made to wear the black stripes on his clothing, Defendants Kemper, Baker, Smith, McMillon, Hood, Helmann, Whitoff, Pelker, Holton, and Cartwright tried to incite Plaintiff to hit them.  Had he done so, he would have been subject to disciplinary action.  Plaintiff indicates that he did not respond to this harassment, in order to

avoid the adverse consequences.  Verbal harassment such as this, however, does not violate the Constitution.  *See DeWalt v. Carter* 224 F.3d 607, 612 (7th Cir. 2000).  These allegations therefore fail to state a claim upon which relief may be granted.

Secondly, Plaintiff states that in response to his complaints about the cell conditions in North 2, Defendants Hood, Baker, Creason, Smith, McMillon, and Shearing "harassed" him in retaliation (Doc. 1, p. 26).  Aside from the specific retaliation claims addressed in Counts 4 and 5 against Defendants Baker and Hood, this general allegation of unspecified harassment does not state a claim upon which relief may be granted.  As noted above, verbal harassment alone does not amount to a constitutional violation.  Further, it does not amount to an adverse action that would sustain a claim for retaliation.  Accordingly, Count 10 against Defendants Kemper, Baker, Smith, McMillon, Hood, Helmann, Whitoff, Pelker, Holton, Cartwright, Creason, and Shearing shall be dismissed without prejudice.

**Count 11 – Mishandling of Grievances**

Defendant Phoenix allegedly refused to process the grievances Plaintiff filed over his cell conditions and officials' refusal to correct them.  However, nothing in the complaint indicates that Defendant Phoenix had any direct personal responsibility for fixing the conditions in Plaintiff's cell.

The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).  Thus, any failure to investigate Plaintiff's grievances, or any other action or inaction with regard to the grievance procedure on the part of Defendant Phoenix

(or any other official who reviewed the grievances) will not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli*, 81 F.3d at 1430. The Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Accordingly, Count 11 against Defendant Phoenix shall be dismissed with prejudice.

**Count 12 – Failure to Monitor Cell Conditions**

Plaintiff claims that Defendants Nwaobasi and Shearing, as medical providers, should have inspected the housing units to ensure they were safe and sanitary. He thus attempts to pin responsibility on them for the unsanitary conditions described in Counts 2 and 3 above. Even if they had such responsibility, this claim fails. Plaintiff's argument suggests that Defendants Nwaobasi and Shearing should be liable for the conditions because of their alleged supervisory role as safety inspectors, but there is no supervisory liability in a civil rights action. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (the doctrine of *respondeat superior* is not applicable to § 1983 actions). Alternatively, Plaintiff's allegations suggest negligence by these Defendants, because they did not fulfill their alleged duties to monitor the safety and sanitation of the housing areas. Negligence, however, does not violate the Constitution. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).

Plaintiff's additional claims that Defendants Nwaobasi and Shearing conspired with other prison officials to intentionally refuse to diagnose prisoners' illnesses and withhold effective treatment, in order to save money and keep the North 2 housing area open, fail to cross the line between fanciful conjecture and plausibility. For all these reasons, Count 12 against Defendants

Nwaobasi and Shearing shall be dismissed with prejudice.

**Count 13 – Denial of Access to Courts**

Prisoners have a fundamental right of meaningful access to the courts.  *Bounds v. Smith*, 430 U.S. 817 (1977).   Nonetheless, an inmate has no constitutional claim unless he can demonstrate that a non-frivolous legal claim has been frustrated or impeded.  *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996).  Plaintiff says that Defendant Bramlett held his legal documents in the law library so that he would miss deadlines.  However, he never identifies any claim, defense, or court action that he was unable to pursue as a result of Defendant Bramlett's interference.  To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions."  *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted).  Plaintiff has failed to do so here; therefore, Count 13 against Defendant Bramlett shall be dismissed without prejudice.

**Count 14 – ADA and Rehabilitation Act Claims**

Other than invoking the Americans with Disabilities Act and the Rehabilitation Act in his introductory remarks (Doc. 1, p. 7), Plaintiff fails to mention these statutes in the body of his complaint.  He does not allege that he is a person with a disability who is entitled to any of the protections offered by the ADA or the RA, nor do any of his factual allegations suggest that he is disabled.  He never articulates how either of these statutes applies to any of his claims.  Accordingly, Count 14 shall be dismissed without prejudice.

**Count 15 – Other Miscellaneous Claims**

The complaint contains various other allegations of additional misconduct, none of which are sufficient to state any other distinct, actionable claims.  For example, the segregation yard

(where Plaintiff was allowed to exercise once) did not allow inmates access to the telephone, weights, or other privileges available in the general population yard.  The deprivation of such privileges does not violate the Constitution.  *See, e.g.*, *Sandin v. Connor*, 515 U.S. 472 (1995) (inmates have no constitutional liberty interest in telephone privileges; variance in custodial conditions does not infringe upon liberty or property interests); *Arsberry v. Illinois*, 244 F.3d 558, 564 (7th Cir. 2001) (prisons may limit inmates' use of the telephone).

Plaintiff's legal mail "disappeared" and other mail was misplaced, but he does not identify any official who may have been responsible or indicate whether this was an isolated problem or a recurring event.  Somebody (again unidentified) allegedly tampered with his food tray, and as a result some food portions were missing.  This information is too sketchy to sustain a constitutional claim against any Defendant.

Plaintiff claims generally that Defendants Creason, Saurwein, Atchison, and Butler knew the cells in North 2 were condemned, yet attempted to house inmates there.  Such a sweeping allegation is not actionable in this case.  *See Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (plaintiff lacks standing in § 1983 action where he alleges that inmates generally are treated in contravention to the Constitution, but not that plaintiff himself was treated in violation of the Constitution).  Plaintiff's specific claims regarding his own placement in unsanitary cells have been addressed above in Counts 2, 3, and 4.

Plaintiff's complaints to Defendants Saurwein and others about having been classified as a "staff assaulter" and made to wear black stripes do not state any claim for relief.  *See DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (prisoners have no liberty or property interest in their prison classifications; citing *Montanye v. Haymes*, 427 U.S. 236 (1976)); s*ee also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (due process protections are not implicated by

prisoner classification).

Plaintiff's only mention of Defendant Johnson is that she told Internal Affairs that Plaintiff had been sexually assaulted by an officer.  This information was not true.  Even if Defendant Johnson lied about this matter, she did not violate Plaintiff's constitutional rights by doing so.  He thus states no actionable claim against her.

All of these allegations are combined into Count 15, as are any other matters not specifically discussed here or in one of the other counts.  These claims, aggregated into Count 15, shall be dismissed without prejudice.

**Defendants to be Dismissed**

As discussed in Counts 1, 2, 8, 9, 10, 13, and 15 above, Plaintiff has failed to state a claim upon which relief may be granted against Defendants Atchison, Kemper, Harrington, Butler, Helmann, Johnson, Smith, Whitoff, Creason, McMillon, Bramlett, Saurwein, or Pelker. Each of these Defendants shall be dismissed from the action without prejudice.

Defendants Anthony and Spiller shall be dismissed from the action with prejudice as discussed in Count 6.  Likewise, because Count 11 shall be dismissed with prejudice, Defendant Phoenix, who is associated only with that count, shall be dismissed from the action with prejudice.

Finally, Plaintiff includes the City of Chester, Illinois in his list of Defendants (Doc. 1, p. 4).  However, he never mentions this Defendant anywhere in his statement of claim, nor does he attribute any alleged wrongdoing to this entity.  In order to obtain relief against a municipality, a plaintiff must allege that the constitutional deprivations were the result of an official policy, custom, or practice of the municipality.  *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978); *see also Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 765 (7th Cir. 2006).  Plaintiff

makes no such allegation, and the facts contained in the complaint do not suggest any connection between the City of Chester's policies, customs, or practices, and the claimed constitutional violations.  Accordingly, the City of Chester shall be dismissed as a Defendant, with prejudice.

**Pending Motions**

Plaintiff has filed multiple motions while this case has been under review, which has caused further delay in the initial disposition of his case.

Plaintiff's motions for recruitment of counsel (Docs. 2 & 6) shall be referred to United States Magistrate Judge Philip M. Frazier for further consideration.

The motion for merit review (Doc. 8) was unnecessary, as the Court regularly reviews all prisoner complaints pursuant to 28 U.S.C. § 1915A.  The merits review of Plaintiff's complaint was already underway as a matter of course before Plaintiff filed the motion.  This motion (Doc. 8) is **GRANTED**, as this order reflects the outcome of the merits review.

The motion to compel IDOC to pay the filing fee owed (Doc. 11) is also superfluous.  The order granting Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 7) directed the Trust Fund Officer at Pontiac to pay the initial partial filing fee of $14.12 and to make further payments according to Plaintiff's account balance.  This order was sent to the Pontiac Trust Fund Officer, and the Court expects that compliance will be forthcoming as funds are available.  This motion (Doc. 11) is **DENIED AS MOOT.**

Plaintiff has filed two motions (Doc. 12, filed on January 9, 2015, and Doc. 13, filed on January 12, 2015) seeking leave to add exhibits to his complaint.  On January 16, 2015, he filed another document entitled "Petition Motion to Add Exhibits to Motion" (Doc. 15), but failed to indicate which of his several motions he wished to supplement with these exhibits.

The first motion (Doc. 12) was accompanied by six pages of proposed exhibits.  These

consist of one letter from the John Howard Association dated June 12, 2013; an April 9, 2014, denial of Plaintiff's grievance against Defendant Bramlett for law library access; and four pages of medical records dating from June-August 2012. As the claim against Defendant Bramlett (Count 13) shall be dismissed, the grievance response is not needed as an exhibit at this time. Likewise, the other documents are not relevant to the threshold review of any other claims. Thus, the motion to add exhibits (Doc. 12) is **DENIED.** Plaintiff may resubmit any of these documents at a future date if they become relevant to the disposition of a future motion or of any claim remaining in this action.

The three pages of proposed exhibits tendered with Doc. 13 are identical to the three pages of exhibits Plaintiff sent in with Doc. 15 just four days later. The only document among these that has any relevance to a pending motion is the January 6, 2015, letter from the law firm of Tomasik Kotin Kasserman, declining to represent Plaintiff; this may be considered together with Docs. 2 and 6 (the motions seeking recruitment of counsel). It has no relevance to the complaint itself. The January 4, 2014, letter denying Plaintiff's grievance over the November 3, 2012, disciplinary report filed by Defendant Kemper (Doc. 15, p. 2) pertains only to Count 9. Its contents do not alter the Court's conclusion that Count 9 should be dismissed. The last document is a letter from Plaintiff to Defendant Phoenix dated September 4, 2013 (Doc. 15, p. 3). It adds nothing of relevance to Plaintiff's claim against Defendant Phoenix in Count 11, which shall also be dismissed. Accordingly, the motion (Doc. 13) to add these three exhibits to the complaint is **DENIED.** The motion (Doc. 15) to add exhibits to a motion is **GRANTED IN PART AND DENIED IN PART.** The Clerk is **DIRECTED** to add the letter at Doc. 15, p. 4, as an exhibit to Doc. 2 (the motion for recruitment of counsel). The other two documents (Doc. 15, pp. 2-3) shall be disregarded.

Finally, on January 21, 2015, Plaintiff filed a "Petition to Court for Consideration of Honest In Forma Pauperis" (Doc. 16).  That petition, construed as a motion, shall be addressed in a separate order.

**Disposition**

The Clerk is **DIRECTED** to add **MELISSA SAURWEIN, SGT. PELKER**, and **LT. CARTWRIGHT** as party Defendants in this action.

**COUNTS 8, 9, 10, 13, 14, and 15** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  **COUNTS 11 and 12** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Defendants **ATCHISON, KEMPER, HARRINGTON, BUTLER, HELMANN, JOHNSON, SMITH, WHITOFF, CREASON, McMILLON, BRAMLETT, SAURWEIN,** and **PELKER** are **DISMISSED** from this action without prejudice.  Defendants **ANTHONY, SPILLER, PHOENIX,** and **THE CITY OF CHESTER, ILLINOIS** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's claims in **COUNTS 5, 6, and 7**, which are unrelated to the claims in Counts 1-4, are **SEVERED** into three separate new cases.  Those new cases shall be:

1)      First Amendment retaliation claim against **DEFENDANT HOOD (Count 5** herein);

2)      Eighth Amendment excessive force claim against **DEFENDANT HOLDER** and **UNKNOWN (JOHN DOE) DEFENDANT OFFICERS (Count 6** herein);

3)      Eighth Amendment deliberate indifference to medical needs claims against **DEFENDANTS SHEARING** and **NWAOBASI (Count 7** herein).

In each of the new cases, the Clerk is **DIRECTED** to file the following documents:

(1)      This Memorandum and Order;

      (2)      The Original Complaint (Doc. 1), including the exhibits at Doc. 5;

      (3)      Plaintiff's motion to proceed *in forma pauperis* (Doc. 2).

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with any or all of the newly-opened cases, he must notify the Court in writing within 35 days (**on or before March 4, 2015**). His written notice must specify which case(s) he wishes to voluntarily dismiss. The Clerk shall notify Plaintiff of the case numbers for these severed actions. Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action(s), he **will be responsible for an additional $350.00 filing fee**[8] for each new case that he does not voluntarily dismiss. Service shall not be ordered on any Defendants in the severed cases until after the deadline for Plaintiff's response.

      **IT IS FURTHER ORDERED** that the _**only claims remaining in this action are COUNTS 1-4, involving Defendants Holton, Cartwright, Baker, and Unknown (John Doe) Defendants**_. This case shall now be captioned as: **CHARLES DONELSON, Plaintiff, vs. GEORGE HOLTON, C/O BAKER, LT. CARTWRIGHT, and UNKNOWN PARTIES (JOHN DOES), Defendants.**

      **IT IS FURTHER ORDERED** that Defendants **HOOD, HOLDER, SHEARING, and NWAOBASI** are **TERMINATED** from *this* action with prejudice.

      As to **COUNTS 1, 2, 3, and 4**, which remain in the instant case, the Clerk of Court shall prepare for Defendants **HOLTON, BAKER,** and **CARTWRIGHT**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a

---

[8] The fee for each severed case shall be $350.00 so long as Plaintiff is granted leave to proceed *in forma pauperis* ("IFP") in those actions. Litigants who are not granted IFP status are assessed an additional $50.00 administrative fee, for a total filing fee of $400.00.

Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint.   Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States**

**Magistrate Judge Philip M. Frazier** for further pre-trial proceedings, which shall include a determination on the pending motions for recruitment of counsel (Docs. 2 and 6).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 28, 2015**

<u>s/ STACI M. YANDLE</u>
United States District Judge